And may it please the Court, my name is- By the way, that lectern, you can adjust up or down. Okay, thank you. Whatever we can to fit you. Thank you. May we proceed? I would like to reserve five minutes of my time for rebuttal. The EEOC presented several reasons why the District Court erred in awarding attorneys' fees to CRST, any one of which requires reversal by this Court. This morning, I would like to focus on one point in particular. The EEOC's lawsuit was not frivolous, unreasonable, or without foundation. The District Court, after reviewing CRST's seven separate summary judgment motions, found 67 women had alleged trial-worthy claims of sexual harassment. This Court found two women more. And yet, these cases were dismissed, and this Court affirmed solely on the ground that the District Court believed EEOC had not satisfied Title VII's pre-suit requirements. One member of this Honorable Court dissented from that ruling. Judge Murphy said that she would have held that EEOC had satisfied Title VII's statutory prerequisites in this case, and she characterized the majority panel's ruling as new and imposing an unprecedented requirement on the EEOC. CRST argues that a one-panel member's dissent alone should not support the EEOC's reasonable belief that we had satisfied Title VII's pre-suit requirements. But no court of appeals has ever affirmed an award of fees against the EEOC under Christiansburg's standard for a prevailing Title VII defendant where one Article III judge dissented on the underlying merits. The EEOC knows of no such case, and CRST has cited no such case. Well, there were so many individual claims here. I guess my bottom line concern is I think that's a good argument, but were there some of the claims that were frivolous such that the district court should go back and look at them individually and say, well, some of these, and I don't know what, and then end up with a percentage that 10 percent, 40 percent, whatever were frivolous and should not have been brought and therefore pay 10 percent or 40 percent of the fees? Certainly. We have argued that at the very least this court would need to be remanded so that the district court could ascertain and CRST could argue which of the 85 women on whose behalf the EEOC sought relief but the district court ruled there was not an actionable sex harassment allegation, which of them were actually frivolous and which of them, although not prevailing, were not frivolous. But before you get to that point, I'd like to call the court's attention to Farrar v. Hobby, a case that EEOC relied on and CRST mentions not once in its brief. In that case, a civil rights claimant had sued a number of defendants on a number of different grounds and finally prevailed on only one defendant with respect to only one of its separate claims, and the jury awarded $1 in nominal relief, and the Supreme Court said that although it affirmed the denial of fees to that civil rights plaintiff on the ground, that the amount in which it prevailed was so minimal as to not warrant fees, it said it was nevertheless the prevailing party. And the fact that EEOC sought relief for a number of women and only 69 of them presented trial-worthy claims, we know of no case in which a district court has awarded fees and certainly no case a circuit court has affirmed fees against the EEOC because it did not prevail on behalf of all of the individuals on whose behalf it sought relief. And furthermore, without even remanding this case, just the nature of this type of claim, sexual harassment is not a matter of black and white. This is not like a non-hiring case where a company has a policy of not hiring women or any one of the other examples in which CRST has conceded on page 61 of its brief that EEOC would not be required to identify all of the claimants during the administrative process. Sexual harassment is an area in which there is no black and white. What is severe and what is not severe, what is sufficient notice to the employer or not sufficient notice to the employer, and what constitutes appropriate remedial steps and does not are all areas that are very gray. And this court has acknowledged that there is no clear-cut determination of what constitutes actionable sexual harassment. Did the district court make any specific findings about whether any of the claims were frivolous and identified specific frivolous aspects of the suit? Not with respect to one single individual claimant. The court broke down the various arguments that EEOC had advanced and said that on each separate argument it was frivolous. But not in the first fee award. Mind you, in the first fee award, the court imposed all of CRST's litigation fees solely on the ground that the court said it was frivolous for EEOC to think that we had satisfied pre-suit requirements. In the second appeal award, the district court broke down the various arguments but did not identify a single claimant. And in fact, even in granting summary judgment, if you look back at the district court's summary judgment decisions, most of them deal with a group of women and the district court would identify one or two, summarize their claims, and say the other six or the other nine are similarly lacking in merit. So even with respect to summary judgment, and we thought that was a failing at that point, the district court never grappled with EEOC's allegations on behalf of individual claimants, but certainly the court did not do that with respect to fees. And that would be, at a minimum, required here. But we would urge this court not even to reach that point because EEOC's claims, not only is 69 women a fairly substantial class claim, with respect to the other 85, EEOC brought the non-frivolous argument that, advanced the non-frivolous argument that CRSC's trainers were the women's supervisors. And the fact that that was a non-frivolous contention, although this court ultimately rejected it, is supported by the fact that, again, Judge Murphy dissented on it, and the Supreme Court granted cert around the same time to address that question. And it was a sharply divided court that ultimately accepted a standard similar to the Eighth Circuit's and rejected the position of the EEOC. But the four dissenting justices in Vance v. Ball State University, the four dissenting justices pointed to CRST as a case in which that argument would have made a difference. And so EEOC would submit that the fact that that's non-frivolous, and so many of our claimants were women who alleged they were sexually harassed by their trainer, that would have impacted not only the notice requirement under Farragher-Eller that an employer may be liable for the harassment of supervisors, even if the employee didn't have specific notice that it was going on, if the employer failed to take reasonable steps in advance to prevent the harassment, and the woman reasonably delayed telling the employer when it was happening. And in this instance, women alleged that they were afraid to report it while they were on the truck because they knew that the driver, the harasser, the trainer, would learn about it, would either overhear them or would be told by the dispatcher. In some cases, they knew the dispatcher to be a friend of the trainer. In other instances, the women, their cell phones had either been removed by the harasser or their chargers had been removed by the harasser, so after 24 hours they had no personal cell phone access and had not yet been taught how to use the truck Qualcomm reporting system. And so there are a number of reasons why we argued below that women who did not tell CRST about harassment as was happening by their trainers acted reasonably in trying to protect themselves and remove themselves from the situation before they reported it to CRST. Do you have any authority, because I don't remember specifically, but do you have any authority that when a district court looks at these, as the district court did here, kind of looked at all your claims rather than an individualized basis, do you have any authority that says you could do one or the other, you should do one or the other, or either one is okay? In other words, should the court just look at the big picture and say, you know, if one claim, if none of the claims support this theory, then you should get attorney's fees if, or you shouldn't, you get a ward against you, or they should go back and look at them individually by each claim? I know of no authority, and I frankly know of no situation like this. The cases that CRST cites are all so dissimilar. Where fees have been imposed on the EEOC, courts, as in the Esplund case, the 11th Circuit found that EEOC had acted unreasonably in the conciliation process, and this was a claim on behalf of a single aggrieved individual. The court said that we cut conciliation off prematurely and then went straight into court. Completely dissimilar from this. In other instances where we brought a class claim, the courts have- Okay, let's talk about just the policy of it for a minute. If the EEOC brings one valid claim and 100 frivolous claims, I guess the question is, does that one valid claim, or are you arguing that one valid claim justifies the 100 other claims that the employer has to defend? Or should the court go back and look at this and say, well, wait a minute, you put the employer through the expense of litigating 10 sub-claims that are- or claims that are 100, I mean, that were frivolous. I recognize that Judge Reed hypothesized that that was a policy reason for not allowing what EEOC did here. Judge Reed did not cite any case as an example where that has happened. We submit that has never happened, and there are very strong reasons why we would not let that happen. If we bring one claim that we believe to have merit, if we are to add 100 frivolous claims, that drains our litigation resources as well, and we would be subject to potential sanctions if they are truly frivolous claims. Under Rule 11, if we're acting in bad faith as a litigation tactic, which is what I think Judge Reed was fearful that we might do, if she did not impose fees on us here, Rule 11 would allow a court to sanction that kind of bad faith behavior. Now, I want to point out here, Judge Reed expressly said she was not finding that EEOC acted in bad faith here. She said that at least in two of her decisions. And we did not act in bad faith here. We had a strong foundation, although albeit not ultimately prevailing on behalf of 85 of our individuals, for believing these women have been subjected to actionable harassment. What's the number of actual women for whom summary judgment was granted to CRST? I couldn't figure out. It was 84, 85, 87. I've heard 84, 87, and now you say 85. What was that number? It was 87, and then this court reversed on two of them. So it became 85 in the end, 85 women, many of whom we would say could not be found to be frivolous based on the fact that they alleged harassment by their trainers. And we had advanced the non-frivolous argument that the analysis is completely different, where CRST's trainers are just like a supervisor. And if the court wanted, I could briefly review why that's a non-frivolous contention. But primarily, CRST, during our investigation, said its trainers are just like supervisors. And that was the statement of the director of the HR. And then again, the Supreme Court's taking cert on a question to address just this kind of situation. So having advanced that non-frivolous argument, the vast majority of those 85 women would already represent non-frivolous claims. For the few women who alleged harassment by a co-driver, so it wasn't their trainer, again, this court has said many times that sexual harassment is not a matter of black and white, that what constitutes severe pervasive instead of merely objectionable behavior is often difficult to ascertain. This is not one of those rare cases where a plaintiff files a lawsuit and points to no supporting case law or nothing in the record to support its claims. And where that happens, this court has not hesitated to affirm an award of fees to a prevailing defendant. In this instance, as this court is aware, in the first appeal, both parties asked for and were granted by this court leave to file over-length briefs in which we made countless citations to the 20-volume appendix in the first appeal, supported by countless citations to legal authority, all of which could have supported our claims. And so this is very different from the type of situation in which fees might be awarded to a prevailing defendant. I would also like to point out that fees are even less defensible on appeal. Judge Reed also granted CRST its fees for the work that it did in defending the first appeal in which this court ruled in the EEOC's favor on a very important substantive legal issue, the question of judicial estoppel, which is why this court remanded the claim with respect to Monica Stark, and resulted in a divided court with a strong dissent on two other very important issues. EEOC's appeal was not frivolous, and Judge Reed erred in granting appellate fees as well as the district court fees. If the court has no further questions, I'll save my remaining time for rebuttal. Okay, thank you very much. Good morning. Is it Mr. Mathias? Mathias. Yes, Your Honor. May it please the court, my name is John Mathias, and I'm here on behalf of the appellee CRST Van Expedited. Just from the look of all the briefs on the podium, I'm reminded how many times these issues have been argued, briefed, decided, argued again, briefed and decided, and here we are doing it again. I'd like to, while open to taking any questions, I'd like to focus on two things primarily. First of all, it's the pattern or practice claim. And then secondly, the prevailing party Christian Burt issues. It's been our position from the beginning that the EEOC here has advanced a groundless pattern or practice claim as part of an overall litigation strategy, which was designed in the first instance to coerce CRST into an early settlement, with the only alternative being facing up to 270 depositions in a very short period of time. Now, Judge Reed has very firm rules about setting trial dates and deadlines. And so we made our motion for a rule to show cause as to why the EEOC shouldn't be prevented from adding over 100 claimants at the last minute, expanding the size of its case fund about four or fivefold up to 270 people on the deadline that Judge Reed had given for adding parties. We made our motion and argued that this wasn't in good faith. It couldn't possibly be so, that this was an obvious move to force us into settlement. In the prior appeal, we announced in the opinion that we didn't find that the EEOC had filed a pattern of practice or had alleged a pattern of practice claim. Judge Smith, I recognize that, and I just read the opinion last night and saw it again. So that's why I wanted to address it, because that's what they told Judge Reed. They told Judge Reed, in opposition to our motion, that they were, in fact, advancing a pattern of practice claim. Now, today and later, they say they haven't. So the record here says that the EEOC takes the position that they never advanced such a claim, when, in fact, they told Judge Reed that they had, and that was the reason why she gave them permission. I mean, her words really were consistent with the EEOC's representations to the court. CRST may assume with some certainty that this is approximately a 270-person pattern of practice case. Should the EEOC's representations to the court turn out to be false, CRST may file an appropriate motion for sanctions and permission to file a substituted expert report. That was in the course of her ruling that day on the motion, denying our motion. And just in support of that, here's a quote from the brief that the EEOC filed in opposition to our motion for a rule of short cause. They wrote, quote, the EEOC, what they wrote was, quote, this is a pattern or practice case in which EEOC alleges that CRST subjected its female truck drivers to a hostile work environment based on sex. That comes from the November 12, 2008 brief opposing our motion to show cause. In that same brief. But isn't it, the way you determine that is you actually look at what they allege in the pleadings and not how they characterize the pleadings in later documents. That's an interesting point, and I think it's an important point, too, because as counsel just mentioned, rule 11 applies. So in this case, they're never, you know, the record is barren of any evidence supporting the pattern or practice claim. They couldn't have alleged a pattern or practice claim, apparently, because they had no evidence of it. So as the case went on, and as, you know, as the record finally shows, you know, the run up to all that. It's not in the record, but it was pretty clear that they were alleging that or they were contending that there was a pattern or practice. When the record becomes clear on this point is when they filed their brief and told Judge Reed that that's what they were doing. They said it again. They said it twice. They said, quote, EEOC believes that individual claims should be considered after a trial of the pattern or practice claim in phase one of this case. So they were telling Judge Reed that the case should be bifurcated. The first trial should be of the pattern or practice claim. The second trial, after they prevailed on the pattern or practice claim, was going to be on all the individual claims. So when Judge Reed made her ruling and said, go ahead with the 270 depositions, we'll take you at your word that you have good faith basis for 270 claims. But if you're wrong, if it turns out to be false, then CRST can come forward. I think she pretty clearly had in mind the notion that these claims weren't investigated, that they hadn't been. That's what we said. They haven't been investigated. How can they raise this many claims? So she gave a deadline. We had to take 150 depositions in two months, three months, I think, to meet her deadline. We thought it was going to be 270, but 120 didn't show up for their depositions. It was an enormous expense for us. And it was at that point in time that we were supposed to fold. And so we were supposed to say, well, isn't there some alternative to this? We can't spend that kind of money. But we didn't do that. Now they contend there was no pattern of practice claim ever, saying it was just a pattern of practice method of proof. It contends that the district court concluded in its summary judgment ruling. That's what they say. They say the district court concluded EEOC should not be allowed to use the pattern or practice method of proof. As if that were a ruling on a motion in limine. On an evidentiary hearing, it wasn't. It was a motion for summary judgment on a pattern of practice claim. That motion was granted. EEOC did not appeal from that ruling. So the record in this case is barren of any evidence that there was ever a good faith pattern of practice claim. And there was not. So by saying to this court that, and they said the first time around and the second time around, that they never made a pattern of practice claim, accepting that is true is what we all must. Then, they misrepresented their case to the district court from the get-go. That's serious business. That imposed a lot of expense upon us for a litigation tactic found out to be such by the district court. Well, why is that not precluded by the district court, since it's saying that she's not making a Rule 11 sanction? She's looking at this purely under the... Well, it's not. It's not a Rule 11 case. The only reason I mentioned Rule 11 is council mentioned it. And Judge Smith was asking about whether, you know, if they pleaded it. And my point is that you can't plead something you haven't investigated. Rule 11 applies to all of us. No plaintiff can do that. But that's not how they handled their case. They handled it as if they had one. So here, when the time came and we made our motion for summary judgment on the pattern of practice claim, Judge Reed treated it as a claim, adjudicated it, found an inner judgment for us on that claim. It was not appealed. The second time around in her award of fees, the pattern of practice claim is front and center. She's awarded us fees on that frivolous claim. It was pretextual. I think she pretty clearly saw it as such. But the argument that the ELC is making to this court for the reason they didn't appeal the pattern of practice ruling, they say that before the district court, and I'm quoting from their brief, this is in page 5 of their reply brief, they say that before the district court issued its pattern of practice ruling in April 2009, however, it had already denied EEOC's motion to use the Teamsters framework on the ground that EEOC waited too long to file its motion. Thus, EEOC did not appeal the pattern of practice ruling because without bifurcation, there was no point. Well, see, the EEOC made a motion for asking the court to bifurcate the trial into a trial of the pattern of practice claim first. Judge Reed denied that because they'd waited too long. We had a trial date that had been set in familiarity with Judge Reed's practices. When she sets a trial date, she means it. And when that motion was made so late in the day, she denied the motion. Well, the summary judgment motion on the pattern of practice claim was pending. If the EEOC wasn't making a pattern of practice claim or if they thought that there was no point because the case isn't going to be bifurcated, that would have been a very good time for them to say to Judge Reed, we're not advancing a pattern of practice claim, so we won't be filing a brief in opposition to the motion for summary judgment. Don't waste your time. It's not important. That's not what they did. They opposed our motion for summary judgment. It was extensive briefing. If you look at the record and you see how many hours Judge Reed spent just on that motion, how many hours she and her staff obviously spent on each one of these individual claims, she looked at every last one of them. She categorized them, mind you, at the end of the day into, well, there's 154 of them left, so this many in this category, this many in that category, but the record is very clear that she looked at every last one of them. It was a painstaking, tedious process to do so, and, you know, if I had only three words on this appeal, and that's all I could argue, my three words would be what she said, and that's in all of her rulings on this case, the various rulings. I think there were seven, six or seven of them, very detailed, very extensive rulings where obviously a lot of time was spent. So they persisted in their pattern of practice claim well after the court denied their request for bifurcation. They didn't appeal. It's been our position from the beginning that this was a ruse. It was a pretextual ruse, a litigation tactic to mislead the district court in the first instance to impose maximum expense upon us and to force capitulation. So, I mean, in the bigger picture, what happened here was instead of fulfilling its statutorily mandated obligations to, you know, first of all to investigate and to evaluate and to conciliate, what the EOC did instead, and I think this is a rogue group, I mean, this is not a typical case, it's a very unusual case, but what they did instead here is instead of doing all of those things that they were supposed to do, they shifted all of their time and expense, all of their overhead from an administrative agency where this work was supposed to be done into that courtroom in Cedar Rapids and gave it to... Counsel, other than the summary statement that the district court made, CRST is the prevailing party and that the Christian Berg standard is satisfied as to all the claims that the EOC appealed, other than the claim on behalf of Stark. Other than that, General, were there any specific findings of any of these claims being frivolous? I believe that, well, and specific findings, I think if you're looking at her order, just the order itself, it says what it says, but behind that order, I think if you look at all of the other orders that have been entered in the case, time and again you can see the grounds that she has given, and so by saying simply, I've looked at all of them the first time, it went up to the Court of Appeals and it was decided on a de novo standard that affirming my rulings the first time around, she's familiar with all of the evidence, she has, as far as the facts are concerned, great deference should be shown to the district court in her understanding of the facts and her judgment on the facts, so the record has a great level of detail as to why she ruled in the first instance in saying that with respect to each one of these categories, I find that there having been insufficient evidence to support even a prima facie case, which is the standard on summary judgment, all you have to do is come forward with some evidence to support your claim, having found in the first instance that there was insufficient evidence, coming to this court and the court upholding the rulings, de novo, insufficient evidence, coming back to her, looking at it again, understanding the facts from the detailed review of the record that she made, her ruling was that in each instance in these categories that the cases were frivolous, and they were, and they were. I don't know of any authority out there by any courts that say that you look this on the broad scope, and the question I asked earlier, you know, if the EEOC has one good claim and a hundred or ten frivolous claims, that's okay, or whether you look at individual claims, because I think what Judge Smith may be asking and what bothers me here is that I don't see in the district court's opinion that kind of individualized analysis. And I'm not sure that's what you have to. I'm just asking you, what is the rule? Maybe your question has two answers. One of them is that the Fox v. Vice says that if you have, you know, frivolous claims, you know, many frivolous claims and only one that's not, that you award, you can award fees for the frivolous claims. Just because there's one claim that was non-frivolous doesn't mean that you can't award Christiansburg fees for the frivolous ones. But if that's the case, don't you have to go back and doesn't the district court have to go back and look at those and say these claims are frivolous, those are not non-frivolous? I think she's done that, though. And somehow proportion the fees? I think she did that. She said 152 of the 154, I believe, individual claims are frivolous, and the pattern of practice claim was frivolous. Now, all this is in the backdrop of all the rulings that she's made in the case where she's looked at each one of these claims, and if you look at her findings, there are individual findings with respect to every last one of the defendants who's been dismissed. Some of them were dismissed for one or more reasons. Well, for example, you do have the dissent of Judge Murphy. She did not believe the claims were non-frivolous, and whether I agree with her or the majority, the fact is she thought the majority came up with a new pre-suit standard, and she thought that the evidence showed the company's drivers were supervisors. So doesn't that get by a frivolous claim, at least on some of them? Not by itself. It's certainly something that should be considered. I think every court would say that, that a dissent is something that should be considered. But a dissent isn't dispositive of the issue of whether claims are frivolous. That's very clear. So if it's a factor to be considered, Judge Reed certainly considered it in the course of her rulings. What's the definition of frivolous? Well, first of all, the Christiansburg standards is frivolous, groundless, or unreasonable in the alternative. So if you look, frivolous probably has a different definition than groundless. You have one very experienced circuit judge who's found there were grounds for those claims. Again, it's a factor to be considered, and Judge Reed considered it. And the exercise of her discretion determined that, notwithstanding all the dissent, that the claims were groundless. Now, I would say that, Judge, if you look at Judge Murphy's dissent, it was based upon a few points that we've contested, and Judge Reed and others have found that they weren't applicable either. Well, first of which is that this court created a new rule with its ruling in the CRST case. So we have always said that's not the case. I'm not here to debate the original opinion. I guess what troubles me about this case is I don't see what I thought would have been more of an individualized analysis of the claims. But I know that the court lumped them, the district court lumped them into various areas, but it seems like some of those had some grounds for what the claims were. Well, when you look at what the evidence was, there was insufficient evidence to support even a summary judgment motion, or to avoid summary judgment. So there wasn't enough evidence to support a prima facie case. So there were judgments that were entered. It certainly meets the Marquardt standard of this court. There were summary judgments entered in each one of these instances. Now, with respect to the contention, the EEOC contention that the 67 weren't decided on the merits, it's pretty clear, really, that when the EEOC brings a case, that these conditions are elements of their case. They've argued that and prevailed on those very points. So these elements of their case that they failed to address and were found wholly wanting are rulings on the merits. Now, this is for the EEOC as a plaintiff, mind you. And I've heard again and again, and we've heard it briefed again and again, that these were 67 meritorious claims. That was never been adjudicated. And secondly, as far as the contention that they were meritorious, they never had a day in court. The EEOC is the plaintiff here. They have to, in their own standing, have to prove these things, that they've met the pre-suit requirements. There's nothing that ever stopped any of the individual claimants from bringing claims or the EEOC giving right to sue letters. So the idea that somehow they were precluded from bringing meritorious claims, what does that mean? Why weren't right to sue letters issued? Why didn't they ever bring these claims on their own? They weren't denied an opportunity to come to the courtroom. It was the EEOC that failed them. No one else failed them if there was a failure. We didn't fail them. And when Judge Reed found that they had wholly abandoned their pre-suit duties, it was for a good reason. They had. This was a litigation tactic. Again, I get back to it. The litigation tactic was the reason that all of this money was spent wasn't, as the EEOC would say, they only had one claim. If this were one claim, if this were Monica Stark's claim, we wouldn't have spent $10.5 million defending against it. If this were one claim, it would have been the pattern or practice claim. That was summarily adjudicated against them. The idea that the contention that this was only one claim, we say, is preposterous. Judge Reed was more charitable in her opinions, but it was those of us who have lived through this and had to spend all the time, effort, and money defending against something that was really a blunt litigation tactic here, not brought in good faith, although the Christiansburg doesn't require that. Christiansburg can, you can bring a case in subjective good faith and still have the Christiansburg sanction levied against you for something that's unreasonable. This is unreasonable. From the get-go, it was unreasonable. There was never any evidence to support a contention that our company engaged in a pattern or practice of sexual harassment. Never. That wasn't appealed. It's a concession in this record that there was no reasonable basis for bringing that claim. The cornerstone for requiring us to take 150 depositions and to defend ourselves against claims, 154 of which were found meritless. Thank you. Thank you very much. Oxford. Thank you. One of their arguments, and it seems that it's in this case, and to paraphrase Judge Richard Arnold, and this was then quoted by the Supreme Court, is that the government is the richest and most powerful litigant to ever come into a federal court. And the point being is their argument is, as you well know, is that this big, rich, powerful government came and sued them and put them through all of this expensive litigation. And that's what Judge Reed is trying to remedy. So what is your answer to that? If I could first address Mr. Mathias's comments about the pattern or practice. I'll address my question first. Oh, I was going to answer it in that context. Okay. We believe that EOC did everything it's obligated to do before it filed suit. And when it filed this lawsuit, it did not call it a pattern or practice case. We did not think at that time it was a pattern or practice case. So in terms of the government with all its resources coming in and imposing this on CRST, CRST had no reason to expect that we were trying to pull the wool over anyone's eyes. In our first Rule 26 disclosures to CRST a few months after suit was filed, we identified 18 women. We thought this was a very small class case, and we would not have necessarily litigated it using the pattern or practice method of proof. As time went on and during discovery, we found many more women than we expected to. Frankly, we were shocked. However, we did not think as the government that we should turn our backs on these women whose claims, many of them we learned of only through CRST's own carefully documented business records of the complaints it had received from women and the details those women gave CRST's HR department of what happened to them and then CRST's own records of what it did in response, which was largely record the complaint, call the two people in, and say to the driver, the harasser, accused harasser, if you did anything wrong, don't do it again, and send them off. And they have a chart that shows the vast majority of these harassers received a verbal warning, regardless of the severity of the claim, including we put in our opening brief one woman who came back and reported she had been raped by her trainer, and she was assured by the HR director, Jim Barnes, that he would be fired. And when we looked at CRST's own records of what they did in response, he got another verbal warning like most of the other harassers. So this is not a case in which we were abusing the government's power to come in. In fact, we thought this was a small case. We were shocked to find it was a larger case, and then we asked Judge Reed if we could use the pattern of practice method of proof. That CRST filed a motion to dismiss our so-called pattern of practice claim, and then Judge Reed responded to that motion. That's CRST's characterization, and that is like a motion in limine to decide before trial what would be the methods of proof. We hoped at that point, even though we had been denied bifurcation, we still thought we might be able to use the pattern of practice, the Teamsters model, which has a very advantageous burden of proof if we meet our initial burden of showing that it's the regular course of the employer's business. Judge Reed had a different view of what constitutes regular course of business. We thought it would be that CRST routinely responded to the complaints it received with the same very lukewarm and inadequate remedy. Judge Reed said, no, we should look at the number of female drivers and see how many of them complained of harassment. So it's just a different view of the case and said on that basis that we had not shown that we were entitled to use pattern of practice. But in that ruling, and that's at addendum page 67, Judge Reed was very clear that that did not in any way deny us the opportunity to prove each one of those women on an individual basis, and we did not eliminate women from our collective group of the class members after Judge Reed's pattern of practice ruling. We went on to argue that each one of those 154 women represented actionable harassment. And if I could just comment with respect to this hypothetical that came up again, if the government were to file a case with one good claim and 100 frivolous claims, we are talking here about 69 trial-worthy claims, 69. And the fact that EEOC thought there were another 85 women who under this court's jurisprudence did allege actionable harassment does not in any way represent a frivolous claim or an abuse of the government's power. We sought relief for 154 women, and this court and the district court agreed that there were 69 women whose cases should go to trial but for the unprecedented novel ruling that we had not satisfied pre-suit requirements. And if I could just, if I could... Okay, time's expired. I think we understand your argument. Thank you both for your presentations today and for your briefing, and we will take it under advisement. Thank you.